IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROY BARTLEY,                      3:13-CV-001410 RE

       Plaintiff,                      **OPINION AND ORDER**

     v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

       Defendant.

**REDDEN**, Judge:

Plaintiff Roy Bartley ("Bartley") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") ending Plaintiff's receipt of Disability Insurance Benefits. For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

/ / /

1 - OPINION AND ORDER

## BACKGROUND

Born in 1962, Bartley had an accident in 2002 in which he fell from a platform and received a head injury. He was awarded disability benefits in 2004 for a neurological disorder and somatoform disorder that resulted in paresis of his left leg and paretic posturing of his left arm, precluding him from even sedentary work. Tr. 19. In December 2010 a Disability Hearing Officer for the Commissioner found that Plaintiff's conditions had improved and his disability ended in July 2010. Tr. 79-102. The determination was affirmed upon reconsideration. After a September 2011 hearing, an Administrative Law Judge ("ALJ") affirmed the determination. Bartley's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ must evaluate whether a claimant continues to be disabled using an eight-step sequential process. 20 C.F.R. § 404.1594. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during his period of disability. Tr. 18. At step two, the ALJ found Plaintiff's medically determinable impairments of anxiety disorder, seizure disorder, and mood disorder, did not meet or equal the requirements of a listed impairment. *Id.*

At step three, the ALJ found that medical improvement occurred as of July 2010, and Plaintiff no longer had the neurological impairment or somatoform disorders that were the basis for the 2004 disability award. Tr. 19. At step four, the ALJ found that Plaintiff's medical improvement was related to his ability to work. Tr. 20. Because the ALJ found Plaintiff's medical improvement was related to his ability to work, the ALJ proceeded directly to the sixth step. 20 C.F.R. § 404.1594(f)(4).

At step six, the ALJ found that, as of July 2010, Plaintiff continued to have severe impairments. Tr. 21.

The ALJ determined that Bartley retained the residual functional capacity ("RFC") to perform a limited range of light work, except he can lift and carry twenty pounds occasionally and ten pounds frequently, he can sit, stand and walk for six out of eight hours each, he should have no contact with the public, he can have occasional interaction with co-workers, and he should not climb, balance or work at heights, including ladders and scaffolds.

At step seven, the ALJ found Bartley was unable to perform his past relevant work as an iron worker, construction worker, laborer, auto body mechanic, irrigation worker, or diesel mechanic as these jobs required medium to heavy exertion. The ALJ found Bartley retained the ability to perform other work, including assembly production, cleaner/polisher, and dowel inspector. Tr. 26. Accordingly, the ALJ found Plaintiff's disability ended as of July 2010.

The medical records accurately set out Bartley's medical history as it relates to his claim for benefits. The court has carefully reviewed the medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Bartley contends that the ALJ erred by: (1) improperly assessing his cognitive impairments; and (2) improperly considering medication side effects.

### I. The Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must

accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

Plaintiff contends that the ALJ failed to include in the RFC limitations arising from his depression and anxiety.

## A. Donna C. Wicher, Ph.D.

Dr. Wicher conducted a Comprehensive Psychodiagnostic Evaluation on April 21, 2010. Plaintiff reported becoming depressed after his wife's 2007 death and made two attempts at suicide. Tr. 275. He thereafter took antidepressants for "a couple of years. He gradually improved and is no longer receiving any mental health treatment." *Id.* Plaintiff denied any current symptoms of depression, anxiety, or acute psychological distress.

Plaintiff reported a seizure disorder for which he took Carbatrol. The last seizure he knew of occurred in July 2007. Dr. Wicher noted:

> He neither demonstrated nor described any current symptoms
> of acute psychological distress. Mental status testing raised
> the question of whether he may have a somewhat modest level
> of intellectual ability, either pre-existing, based on his history
> of special education classes and failure to graduate from high
> school, and or secondary to the closed head injury he sustained
> in 2002.

Tr. 278.

4 - OPINION AND ORDER

Dr. Wicher found Plaintiff had mild deficits in his ability to perform activities of daily living, and moderate deficits in social functioning, based on his relative social isolation and history of leaving some jobs due to difficulty getting along with his employer. Dr. Wicher noted Plaintiff's pace was not formally assessed, but he appeared to have mild to moderate deficits in concentration, persistence, and pace. *Id.*

Plaintiff argues that the ALJ erred by failing to include a "modest level of intellectual ability" in his RFC. However, Dr. Wicher did not assess borderline intellectual functioning. The ALJ adequately accounted for Plaintiff's modest intellect when he found Plaintiff "has a limited education" and asked the Vocational Expert ("VE") to take Plaintiff's limited education into account when considering appropriate examples of occupations. Tr. 26, 45.

Based on Dr. Wicher's opinion, the ALJ found Plaintiff had "mild to moderate" limitations of concentration, persistence, or pace. Tr. 19, 278. This does not compel a cognitive restriction in the residual functional capacity finding. *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007).

**B. Charles O'Bannon, Ph.D.**

Dr. O'Bannon completed a form prepared by counsel in September 2011. Tr. 380-84. Plaintiff's fiancé died in March 2011. Dr. Bannon saw Plaintiff on March 24 and 31, 2011, and then on August 25, 2011, and twice thereafter and was Plaintiff's treating psychologist. Tr. 380. Dr. O'Bannon reported a current diagnosis of Adjustment Disorder "with mixed disturbance of emotions and conduct. However, he appears to have serious traumatic brain injury that seriously impairs his ability to grieve the loss of his fiance...Diagnosis will likely be changed to a mood and/or anxiety disorder on completion of assessment." *Id.*

Dr. O'Bannon opined that Plaintiff had depression and anxiety. Tr. 381. He prescribed Prozac. Dr. O'Bannon checked boxes indicating Plaintiff's concentration, persistence, and pace was markedly impaired, and that Plaintiff's social functioning was extremely impaired. Tr. 382. Dr. O'Bannon found Plaintiff markedly impaired in the ability to maintain attention and concentration, to perform activities within a schedule, to sustain an ordinary routine without supervision, to complete a normal workday or workweek, and to interact with the general public. Tr. 383. Dr. O'Bannon opined that Plaintiff would have "extreme" difficulty in maintaining any activity for more than an hour, and would require unscheduled breaks from even a simple, routine job. *Id.* Finally, Dr. O'Bannon noted Plaintiff would miss more than two days of work per month because of his impairments. Tr. 384.

Plaintiff contends that Dr. O'Bannon's comment about a "serious traumatic brain injury" indicates a more complex mental impairment than the ALJ assessed.. The ALJ gave little weight to Dr. Bannon's opinion, citing a conflict with treatment records. Tr. 24. Plaintiff does not directly challenge the ALJ's assessment of Dr. O'Bannon's opinion.

Plaintiff argues the ALJ failed to include in the RFC the requirement that any work environment be low stress because his neurological seizures are triggered or exacerbated by stress. However, the ALJ noted that after Plaintiff's doctor switched his medication to Depakote ER in May 2011, Plaintiff's mood stabilized and "he does not have to take anxiety medication anymore." Tr. 24, 349.

The ALJ's interpretation of the evidence was reasonable and supported by substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)(citations omitted).

///

6 - OPINION AND ORDER

### C. Medication Side Effects

Plaintiff argues that the ALJ did not adequately consider the side effects of his medications.

In December 2010, treating physician Vitalie Lupu, M.D. completed a questionnaire. Tr. 310-13. To the question of whether medication side effects limited Plaintiff's ability to function, Dr. Lupu wrote "None." Tr. 312.

Treating physician Sarah Schultz, M.D. completed a questionnaire in September 2011. Tr. 374-78. In response to the question about medication side effects that would impact Plaintiff's ability to work, Dr. Schultz wrote "none that I know of." Tr. 376.

The ALJ noted the adjustment to Plaintiff's medication in February 2011 due to intolerable side effects from Carbatrol. Tr. 22, 357, 352. The ALJ noted that the medication change made a marked improvement. Tr. 22.

On this record, the ALJ's determination that medication side effects did not significantly limit Plaintiff's ability to work is supported by substantial evidence.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

7 - OPINION AND ORDER

## CONCLUSION

The Commissioner's decision that Bartley is no longer disabled as of July 2010 is based upon the correct legal standards and supported by substantial evidence. The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this \_\_\_ day of July, 2014.

_____
JAMES A. REDDEN
United States District Judge

8 - OPINION AND ORDER